**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ALEJANDRO GONZALEZ-ALLER,

    Plaintiff,

v.                                                      No. CIV 11cv105 LH/ACT

NORTHERN NEW MEXICO COLLEGE and
ANTHONY SENA, in his individual capacity,

    Defendant*s*.

**FIRST AMENDED COMPLAINT FOR DAMAGES FROM VIOLATIONS OF THE AGE DISCRIMINATION INEMPLOYMENT ACT, FAMILY AND MEDICAL LEAVE ACT,BREACH OF AN EXPRESS CONTRACT OF EMPLOYMENT, BREACH OF AN IMPLIED CONTRACT OF EMPLOYMENT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, AND NEGLIGENT MISREPRESENTATION**

**COMES NOW** Plaintiff Alejandro Gonzalez-Aller [hereinafter "Gonzalez-Aller"], by and through his counsel, Law Offices of Michael E. Mozes, P.C. (Michael E. Mozes), and hereby submits his First Amended Complaint for Damages from Violations of the Age Discrimination in Employment Act ("ADEA"), Family and Medical Leave Act ("FMLA"), Breach of an Express Contract of Employment, Breach of an Implied Contract of Employment, Breach of the Covenant of Good Faith and Fair Dealing, and Negligent Misrepresentation.

**I. JURISDICTION**

1.    This case arises under the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq.*, the Family and Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2601, et seq., and New Mexico common law.

2.    Gonzalez-Aller is, and at all times material hereto has been, a resident of the County of Bernalillo, State of New Mexico.

3.    Defendant Northern New Mexico College [hereinafter "NNMC"] is, based upon

information and belief, a suable governmental entity located and operating in the County of Rio Arriba, State of New Mexico.  At all times material hereto, Defendant NNMC met the number of employee requirements set forth in the federal statutes under which Gonzalez-Aller brings this action.

4.	Defendant Anthony Sena [hereinafter "Sena"] is, and at all times material hereto has been, a resident of the County of Rio Arriba, State of New Mexico.  In addition, at all times material hereto Sena exercised duties as Gonzalez-Aller's supervisor.

5.	On February 2, 2010, Gonzalez-Aller entered a charge with the New Mexico Human Rights Bureau ("HRB"), concurrently filed in the federal Equal Employment Opportunity Commission ("EEOC").  Gonzalez-Aller charged that NNMC had discriminated against him on the basis of his age, serious medical condition, and disability.

6.	On September 10, 2010, Gonzalez-Aller, through counsel, requested a waiver of hearing for the purposes of proceeding to trial on his charges before the HRB.  Gonzalez-Aller never received the waiver; however on November 1, 2010, the EEOC issued a Notice advising Gonzalez-Aller that the EEOC was closing his case and that he had 90 days to file suit following receipt of the Notice.

7.	The filing of this action is within 90 days of the receipt by Gonzalez-Aller of the November 1, 2010 Notice,

8.	This Court has jurisdiction over the subject matter of this action and personal jurisdiction over the parties named herein.

9.	Venue is proper in this Court.

10.	This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

## II.  FACTUAL ALLEGATIONS

11.     Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 10 as set forth above.

12.     Gonzalez-Aller is a Ph.D. in engineering with assorted other Master's degrees in nuclear engineering and mathematics.

13.     NNMC has continuously employed Gonzalez-Aller in a number of faculty positions since 1993.  Relevant positions to the claims set forth herein that Gonzalez-Aller occupied at NNMC are (1) from August 2005 to August 2007 he was Chair of the Math, Science, and Engineering Department and (2) from August 2007 through August 2009 he served as Dean of the Math and Science Department.  At all times material hereto, Gonzalez-Aller qualified for FMLA leave and had worked the sufficient number of hours to accumulate 12 weeks of FMLA leave at the time of the events material to his claims.

14.     In April 2009, the Faculty Senate at NMMC recommended a reorganization to the then-president, Dr. Jose Griego.  As part of the re-organization, all dean positions were to be re-advertised internally.  The Board of Regents of NNMC approved the re-organization plan in the April/May 2009 time frame.

15.     On June 28, 2009, NNMC gave Gonzalez-Aller a contract for the position of Dean of the Math and Sciences Department for the period July 1, 2009 through May 31, 2010.

16.     Gonzalez-Aller signed the contract and returned it to the NNMC administration.

17.     After submitting the contract for school year 2009-10, Dr. Griego and Anthony Sena, Provost, met with Gonzales-Aller and advised him that NNMC was changing the designation of deans in their respective departments.  Griego and Sena notified Gonzalez-Aller that NNMC had decided to name him as Director of the Mathematics Program starting August 1,

2009. In effect, this appointment constituted a significant demotion in all respects.

18. Sena sent Gonzalez-Aller an E-mail on July 24, 2009 that confirmed the decision to name Gonzales-Aller as Director of the Mathematics Program.

19. The NNMC administration assured Gonzalez-Aller during this time that his salary as Director of the Mathematics Program would remain that noted on the contract he had signed for the 2009-10 year–$65,034.00.

20. Sena sent Gonzalez-Aller another E-mail on July 31, 2009. Sena notified Gonzalez-Aller that his salary would be reduced because he was a Director. However, Sena added that NNMC would pay Gonzalez-Aller a stipend that would equalize the amount of money set forth in the contract Gonzalez-Aller signed for 2009-10.

21. No employee of NNMC ever stated to Gonzalez-Aller that the dean position he had been promised was eliminated due to budget cuts.

22. The fact is that all dean positions at NNMC were not eliminated. Gonzalez-Aller knows that the Dean of Education and the Dean of Finance positions remained without modification.

23. The NNMC administration created a new position titled the Chair of the Math and Science Department. The NNMC hired a female who was significantly younger than Gonzalez-Aller into this Chair. The reported salary paid to the Chair represents a significant increase over what Gonzalez-Aller had been paid as Dean of the Math and Science Department and was significantly more than what he was being paid for the 2009-10 year. In almost all respects, the Chair position duplicated those duties Gonzalez-Aller had performed as Dean. The fact that the new Chair was paid almost 30% more than Gonzalez-Aller had received as dean flies in the face of any NNMC claim that the changes were due to budgetary constraints.

24. Gonzalez-Aller had requested and received approval for leave during the early part of August. Gonzalez-Aller planned to be out-of-work during the first part of August and through August 10th. Gonzalez-Aller appropriately notified his NNMC supervisors that he would be out-of-work the first week of August.

25. Faculty normally returned over the years for the Fall semester by attending convocation. Convocation in 2009 was set for August 17, 2009. Based upon prior experience at NNMC and without any other notice from the administration, Gonzalez-Aller reasonably believed that he needed to be present for work on August 17, 2009.

26. Prior to August 2009, Gonzalez-Aller had not been warned, criticized, or disciplined for any matter related to his attendance at NNMC.

27. On August 10, 2009, Gonzalez-Aller became severely ill due to extreme dizziness, vomiting, and an inability to walk even a short distance.

28. Gonzalez-Aller immediately made arrangements to see his primary care physician, John Guttman, M.D. Guttman had Gonzalez-Aller immediately transported to the hospital because of his serious medical condition. Gonzalez-Aller remained in the hospital from August 10-12 and was diagnosed with laberynthitis, an infection in the ear that causes a loss of balance and vertigo. Laberynthitis is a qualifying "serious health condition" within the meaning of the FMLA. Due to laberynthitis, Gonzalez-Aller underwent both inpatient care and ongoing treatment.

29. On August 17, 2009, when he was finally well enough to communicate with NNMC administration, Gonzalez-Aller explained to Sena and the Chair of the Mathematics and Science Department the nature of his condition. Gonzalez-Aller also provided NNMC a copy of his discharge summary from the hospital, which included restrictions such as no driving, no

climbing, avoiding areas where a fall could occur, and a list of medicines Gonzalez-Aller was prescribed.  Prior to August 17, 2009, Gonzalez-Aller was physically unable to communicate with Defendants about any matter related to his medical condition.

30.     Gonzalez-Aller sent another E-mail to Sena on August 22, 2009, updating Sena on his medical condition and discussing with Sena what Gonzalez-Aller had done to ensure that his class schedule would be covered until he could return to work.  At this point, Gonzalez-Aller's treating physicians had not permitted him to return to work.

31.     Sena responded on August 22nd to Gonzalez-Aller by threatening Gonzalez-Aller's continued employment, warning Gonzalez-Aller about the effect of the continued absences on Gonzalez-Aller's employment, and essentially advising Gonzalez-Aller that Sena was unhappy with Gonzalez-Aller's inability to handle his classes.  At the time that Gonzalez-Aller was on leave due to his serious health condition, Gonzalez-Aller was the Director of the Mathematics and Physical Science Programs at Defendant NNMC.

32.     On August 31, 2009, Sena advised Gonzalez-Aller that he would not receive the promised Director position.  In other words, Defendants NNMC and Sena had removed Gonzalez-Aller from his Director position during the period of time Gonzalez-Aller was out on leave due to his serious health condition.

33.     Sena advised Gonzalez-Aller that the reasoning underlying the decision to not have Gonzalez-Aller be the Director was related to the absence caused by the laberynthitis and Gonzalez-Aller's then medical condition.  Sena also mentioned the fact that Gonzalez-Aller taught at Central New Mexico college in Albuquerque, as if this somehow mitigated the damages caused by NNMC.

34.     Gonzalez-Aller's treating physicians released him to return to work on September

6

8, 2009, with restrictions and limitations.

35. Gonzalez-Aller returned to work, although now at a significantly reduced salary from that originally contracted for and agreed to.

36. Defendants did not provide Gonzalez-Aller adequate notice of his rights and privileges under the FMLA. Defendants further failed to advise Gonzalez-Aller of his eligibility for FMLA leave. Additionally, Defendants at no time provided Gonzalez-Aller written notice of of the specific obligations and expectations of Gonzalez-Aller during the period of his leave in Aqugust-September 2009. Due to these failures, Defendants inappropriately did not designate the leave Gonzalez-Aller took in August-September 2009 as FMLA leave.

37. At all times relevant hereto, the serious health condition Gonzlaez-Aller suffered, laberynthitis, was unforeseeable.

38. During the period of Gonzalez-Aller's absence, Defendants required Gonzalez-Aller to address and respond to work-related matters at the risk of loss of Gonzalez-Aller's employment.

39. The Director of Mathematics position went to David Torres, a significantly younger faculty member at NNMC who had less experience, lesser qualifications, and lacked knowledge in the administration of an academic department.

40. Gonzalez-Aller was over 55 years of age at the time of the allegations relevant hereto.

41. Gonzalez-Aller was eminently qualified for the position of Director of the Mathematics Program at NNMC.

42. Furthermore, Gonzalez-Aller was more qualified than the younger female, Camilla Bustamante, who received the position of Chair of the Mathematics and Sciences

7

Department.

43. At no time has Defendant offered to provide any remedies to Gonzalez-Aller for its unlawful conduct.

## COUNT I

## VIOLATIONS OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

44. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 43 as set forth above.

45. Gonzalez-Aller, age 55 at the time of the actions complained of, was a member of a class protected under the ADEA.

46. Gonzalez-Aller suffered adverse employment actions in the form of the loss of his Dean and Director positions, the reduced job duties associated with the demotion, the lack of consideration for the Chair position, and the harassment and retaliation he encountered when he attempted to hold Defendant to prior agreements.

47. Gonzalez-Aller was eminently qualified for the positions of Dean, Chair, and Director of any department related to the Mathematics and Sciences.

48. Despite being eminently qualified for each and every one of these positions, Defendant refused and failed to place Gonzalez-Aller in these positions, give him fair consideration for these positions, and treated Gonzalez-Aller less favorably than others younger than Gonzalez-Aller.

49. Defendant has no legitimate, non-discriminatory business reason for any of the adverse employment actions described above.

50. Any such reason put forward by Defendant is merely a pretext for discrimination.

51. But for the age discrimination practiced by Defendant, Gonzalez-Aller would

have been selected for either the Chair or Director position in the Mathematics and Sciences Department.

52. Gonzalez-Aller is entitled to all remedies and relief available to him under the ADEA, including, but not limited to liquidated damages because of the intentional, willful, wanton, and reckless acts of Defendant.

## COUNT II

## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

### INTERFERENCE

53. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 52 as set forth above.

54. The FMLA provides, in pertinent part, that an employee with a "serious health condition" is eligible for up to 12 weeks of leave in any designated year where the employee meets the qualifying number of work hours during the preceding year. At all times relevant hereto, Gonzalez-Aller satisfied the qualifying conditions for 12 weeks of FMLA leave during the period August-September 2009.

55. Gonzalez-Aller suffered from a "serious health condition" in August-September 2009, as that term is defined by the FMLA. This "serious health condition" was laberynthitis with its attending symptomatology. The leave taken by Gonzalez-Aller in August-September 2009 should have been designated as FMLA-qualified leave by Defendants.

56. However, and in violation of the FMLA regulations, Defendants did not notify Gonzalez-Aller of his eligibility for FMLA leave. In addition, Defendants did not notify Gonzalez-Aller that the August-September 2009 leave constituted qualified FMLA leave.

57. At no time did Defendant Sena or any other supervisor or employee of Defendant

NNMC indicate to Gonzalez-Aller that he was eligible for FMLA leave. Further, in violation of the FMLA, Defendants did not provide Gonzalez-Aller of adequate notice of rights and responsibilities under the FMLA. In so acting, Defendants deprived Gonzalez-Aller from accessing his federal FMLA entitlement.

58. The leave Gonzalez-Aller was on in August-September 2009 was properly FMLA leave and should have been designated as such by Defendants. Defendants failed to make the appropriate designation.

59. The FMLA requires that an employer return an employee on FMLA leave to their former position after the employee returns to work off FMLA qualified leave. Defendants did not return Gonzalez-Aller to the Director position when he returned from FMLA leave.

60. The failure to provide the proper statutory FMLA notices, the requirement that Gonzalez-Aller continue to attend to workplace matters while on FMLA leave, the failure to reinstate Gonzalez-Aller to his former position, the harassing and hostile behavior of Defendants while Gonzalez-Aller was on leave, including, but not limited to, threats of loss of employment, the demotion in Gonzalez-Aller's duties and responsibilities, and the failure to fairly consider Gonzalez-Aller for promoted positions for which he was qualified all constitute unlawful interference with Gonzalez-Aller's FMLA rights.

61. As a result of this unlawful interference, Gonzalez-Aller has suffered damages in an amount to be determined at trial, including liquidated damages for the willful and intentional acts of Defendant.

## COUNT III

## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

## RETALIATION

62. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 61 as set forth above.

63. Gonzalez-Aller participated in protected activity under the FMLA when he took leave in August-September 2009 for his hospitalization and treatment related to his serious health condition.

64. Following Gonzalez-Aller's participation in FMLA-protected activity, Defendants took adverse employment actions against Gonzalez-Aller in the form, among other acts, of demoting him, refusing to reinstate him to his former job, denying him promotional opportunities afforded others, and harassing and threatening Gonzalez-Aller.

65. A causal connection exists between Gonzalez-Aller's participation in protected activity and the adverse employment actions described herein.

66. Defendants had no legitimate business reasons for retaliating against Gonzalez-Aller in the form and manner described above. Whatever alleged business reasons reasons these Defendants may put forward are mere pretexts for acting contrary to the statutory requirements of the FMLA.

67. Gonzalez-Aller has suffered damages because of Defendants' retaliation in an amount to be determined at trial, including, but not limited to, liquidated damages for the intentional and willful acts of Defendants.

## COUNT IV

## BREACH OF AN EXPRESS CONTRACT OF EMPLOYMENT

68. Gonzalez-Aller adopts and incorporates by reference paragraphs 1 through 67 as set forth above.

69. On June 28, 2009, the parties signed an employment for the school year 2009-10. In this employment contract Defendant promised to pay Gonzalez-Aller an annual salary of $65,034 for exercising the duties of Dean, College of Match, Sciences, and Engineering.

70. Defendant breached this contract by removing Gonzalez-Aller from his position as Dean and refusing to pay Gonzalez-Aller the stipulated amount of salary.

71. Defendant breached the contract without excuse. At all times relevant hereto Gonzalez-Aller sought to enforce the terms of the June 28th contractual agreement only to be rebuffed by Defendant.

72. As a result of the breach of the employment agreement, Gonzalez-Aller has suffered and continues to suffer damages, including, but not limited to, damages for the loss of wages and benefits, past, present, and future.

## COUNT V

## BREACH OF AN IMPLIED CONTRACT OF EMPLOYMENT

73. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 72 as set forth above.

74. Defendant compiled and published personnel policies and procedures to its employees, including Gonzalez-Aller.

75. All of Defendant's employees were required to conform their conduct to the dictates of policies and procedures. If any employee violated any of these personnel policies and

procedures, they could be disciplined up to and including termination. Defendant impressed upon all employees the requirement to abide by these policies and procedures. Defendant's managers and supervisors were required to implement and enforce these policies and procedures in the workplace.

76. These policies and procedures were directed towards the taking of leave, demotions, job transfers, hiring, grievance procedures, and return-to-work, among others. These policies all came into play during the period of time Gonzalez-Aller was unable to return to work because of his serious health condition.

77. Defendant violated and breached repeatedly these policies and procedures mentioned in the previous paragraph by demoting Gonzalez-Aller without due process, forcing him to work during the period of time he was on leave, refusing to grant Gonzalez-Aller sick leave, hiring lesser-qualified candidates for positions Gonzalez-Aller had applied for and shown interest in, and removing Gonzalez-Aller from performing administrative duties in the Mathematics, Sciences, and Engineering Department, among other violations.

78. These personnel policies and procedures constitute an implied contract of employment by which the parties through their course of conduct and usage demonstrated an intent to be bound.

79. The violations of the implied contract herein constitute breaches of the implied contract of employment.

80. Gonzalez-Aller reasonably expected that Defendants would abide by the implied contract.

81. As a result of these breaches of the implied contract of employment, Gonzalez-Aller is entitled to an award of damages at trial.

## COUNT VI

**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

82. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 89 as set forth above.

83. Defendants breached the implied covenant of good faith and fair dealing associated with any contract in the State of New Mexico by not performing in accordance with the contractual obligations established through both the express and implied contracts between the parties.

84. It is a breach of contractual duty to act in bad faith. Good faith requires that a party to a contract act honestly and in accordance with the standards of fair dealing.

85. Defendant breached the covenant of good faith and fair dealing by demoting Gonzalez-Aller unlawfully, refusing to abide by the unambiguous contractual terms agreed to by the parties, and treating Gonzalez-Aller in a manner contrary to the requirements of personnel policies and procedures.

86. Defendants acted in this manner because it had decided to deal with Gonzalez-Aller in a disparate and discriminatory manner.

87. Gonzalez-Aller is entitled to all remedies and relief available to him for these breaches of the implied covenant of good faith and fair dealing.

## COUNT VII

**NEGLIGENT MISREPRESENTATION**

88. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 87 as set forth above.

89. Gonzalez-Aller was advised on several occasions that he would obtain certain

administrative positions with Defendant.  Among those positions are the Dean and Director positions related to the Mathematics, Engineering, and Sciences Department.

90. Defendant negligently misrepresented to Gonzalez-Aller that he would assume the Dean's and/or Director's position.

91. When these misrepresentations were made, the employees of Defendant were acting in their business capacity.

92. Defendant breached a duty to Gonzalez-Aller to falsely rely on Defendant's misrepresentations related to Gonzalez-Aller's employment status.

93. Gonzalez-Aller justifiably relied, to his detriment, on the misrepresentations made by Defendant.

94. Gonzalez-Aller is entitled to all remedies and relief available for these misrepresentations.

## DAMAGES

95. Gonzalez-Aller hereby adopts and incorporates by reference paragraphs 1 through 94 as set forth above.

96. Gonzalez-Aller seeks damages for lost back and future wages and benefits.

97. Gonzalez-Aller seeks damages for mental, emotional, and psychological distress.

98. Gonzalez-Aller seeks damages for loss of enjoyment of life.

99. Gonzalez-Aller seeks punitive damages for the intentional, willful, wanton, and reckless acts of Defendant.

100. Gonzalez-Aller seeks pre- and post-judgment interest.

101. Gonzalez-Aller seeks his attorney's fees and costs as allowable under rule, statute, and law.

102. Gonzalez-Aller seeks liquidated damages for the intentional acts of Defendants in violation of his ADEA and FMLA rights.

**WHEREFORE** Gonzalez-Aller respectfully requests this Court grant him judgment in his favor, an award of the damages sought herein, and such further relief the Court deems just and appropriate under the circumstances.

    Respectfully submitted,

    LAW OFFICES OF MICHAEL E. MOZES, P.C.

    */s/Michael E. Mozes*
    MICHAEL E. MOZES
    Attorney for Plaintiff Gonzalez-Aller
    5732 Osuna N.E.
    Albuquerque, NM 87109
    (505) 880-1200
    (505) 881-2444 (FAX)
    mozeslawoffice@gmail.com

**I HEREBY CERTIFY** that a copy of the foregoing pleading was sent to opposing counsel of record, Patricia G. Williams, Esq., via e-mail on July 12, 2011.

*/s/Michael E. Mozes*
Michael E. Mozes