## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ALEJANDRO GONZALEZ-ALLER,

       Plaintiff,

v.                                                                      CIV No. 11-105 LH/ACT

NORTHERN NEW MEXICO COLLEGE and,
ANTHONY SENA, in his individual capacity,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion and Memorandum in

Support of Motion to Dismiss ADEA and FMLA Claims (Counts I, II, and III), (Doc. 38), filed

January 31, 2012.  The Court, having considered the motion, the briefs of the parties, and the

applicable law, and otherwise being fully advised, finds that the motion should be **granted in**

**part and denied in part**.  Accordingly, Plaintiff's claims under the Age Discrimination in

Employment Act ("ADEA") and the Family and Medical Leave Act ("FMLA") against

Defendant Northern New Mexico College ("NNMC"), in Counts I, II, and III, are dismissed.

However, Plaintiff's FMLA claims against Defendant Anthony Sena ("Defendant Sena") in his

individual capacity, in Counts II and III, remain.

## I.  BACKGROUND

The following facts are taken from Plaintiff's First Amended Complaint for Damages

from Violations of the Age Discrimination in Employment Act, Family and Medical Leave Act,

Breach of an Express Contract of Employment, Breach of an Implied Contract of Employment,

Breach of the Covenant of Good Faith and Fair Dealing, and Negligent Misrepresentation

("Plaintiff's Amended Complaint") (Doc. 18) and are construed in the light most favorable to

Plaintiff:

Plaintiff Alejandro Gonzalez-Aller ("Plaintiff"), a Ph.D. in engineering, has been

continuously employed by Defendant NNMC in various faculty position since 1993, including

Chair of the Math, Science, and Engineering Department from August 2005 to August 2007 and

Dean of the Math and Science Department from August 2007 to August 2009. (Pl.'s Am.

Compl. (Doc. 18) ¶ 13.) Defendant Sena "exercised duties" as Plaintiff's supervisor at all times

material and served as Provost for NNMC. (*Id*. ¶¶ 4, 17) Defendant NNMC is a governmental

entity operating in the County of Rio Arriba, New Mexico. (*Id*. ¶ 3.)

In April 2009, while Plaintiff was serving as Dean of the Math and Science Department

at NNMC, the Faculty Senate recommended a reorganization to then-president, Dr. Jose Griego.

(*Id*. ¶ 14.) As part of that reorganization, all dean positions were to be re-advertised internally.

(*Id*.) NNMC's Board of Regents approved the re-organization plan in the April/May 2009 time

frame. (*Id*.)

On June 28, 2009, NNMC presented Plaintiff with a contract for the position of Dean of

the Math and Science Department for the period of July 1, 2009 through May 31, 2010

(hereinafter "the Contract"). (*Id*. ¶ 15.) Plaintiff signed the Contract and returned it to NNMC

administration. (*Id*. ¶ 16.) Sometime after Plaintiff's submission of the Contract, NNMC

president, Dr. Griego, and Provost, Defendant Sena, met with Plaintiff and advised him that

NNMC was changing the designation of deans. (*Id*. ¶ 17.) Dr. Griego and Defendant Sena

notified Plaintiff that NNMC had decided to name him as Director of the Mathematics Program,

effective August 1, 2009, rather than Dean of the Math and Science Department. (*Id*.) On July

24, 2009, Defendant Sena sent Plaintiff an e-mail confirming the decision to name Plaintiff as

Director of the Mathematics Program. (*Id.* ¶ 18.)  The position of Director of Mathematics

constituted a significant "demotion" in relation to the position of Dean of the Math and Science

Department.  (*See id.* ¶ 17.)  Nevertheless, NNMC administration assured Plaintiff that his salary

as Director of the Mathematics Program would be the equivalent of the salary referenced in the

contract, which he had signed for the 2009-10 year:  $65,034.00.  (*Id.* ¶ 19.)  Accordingly,

Defendant Sena sent Plaintiff another e-mail on July 31, 2009, notifying him that his salary

would be reduced based on his directorship but that NNMC would pay him "a stipend that would

equalize the amount of money set forth in the [C]ontract."  (*Id.* ¶ 20.)

Thereafter, NNMC administration created a new position titled "Chair of the Math and

Science Department" and filled the position with a female who was significantly younger than

Plaintiff.  (*Id.* ¶ 23.)  The "reported salary" paid to the female Chair was a significant increase

over what Plaintiff was paid as Dean of the Math and Science Department and the amount that

he was promised in the Contract for the 2009-10 year, yet the Chair position duplicated the

duties that Plaintiff performed as Dean in almost all respects.  (*Id.*)

Plaintiff requested and received approval from his NNMC supervisors for leave during

the first week of August 2009.  (*Id.* ¶ 24.)  Faculty at NNMC typically returned for the Fall

semester by attending the convocation. (*Id.* ¶ 25.)  The 2009 Convocation was scheduled for

August 17, 2009; thus, based upon prior experience at NNMC, and without notice to the contrary

from administration, Plaintiff believed that he needed to return to work at NNMC on August 17,

2009.  (*Id.*)  Prior to August 2009, Plaintiff "had not been warned criticized, or disciplined for

any matter related to his attendance at NNMC."  (*Id.* ¶ 26.)

On August 10, 2009, Plaintiff "became severely ill due to extreme dizziness, vomiting,

and an inability to walk even a short distance.  (*Id*. ¶ 27.)  Plaintiff was admitted to the hospital,

where he remained from August 10, 2009 through August 12, 2009, and was diagnosed with

labrynthitis, an infection in the ear that causes loss of balance and vertigo.  (*Id*. ¶ 28.)

On August 17, 2009, Plaintiff explained the nature of his condition to both Defendant

Sena and to the new Chair of the Mathematics and Science Department.  (*Id*. ¶ 29.)

Additionally, he provided NNMC with a copy of his discharge summary from the hospital,

which included restrictions such as no driving, no climbing, and avoiding areas where a fall

could occur.  (*Id*.)  As of mid-August, Plaintiff's treating physicians had not yet released him to

return to work.  (*Id*. ¶ 30.)

On August 22, 2009, Plaintiff sent another e-mail to Defendant Sena updating him on his

medical condition and discussing what he had done to ensure that his class schedule would be

covered until he could return to work.  (*Id*.)  Defendant Sena responded to Plaintiff, threatening

his continued employment at NNMC and expressing his dissatisfaction with Plaintiff's inability

to handle his classes.  (*Id*. ¶ 31.)  According to Plaintiff, at the time that he was on leave due to

labrynthitis, in early to mid-August 2009, he was the Director of the Mathematics and Physical

Science Programs at NNMC.  (*Id*.)

On August 31, 2009, Defendant Sena advised Plaintiff that he would not receive or

would be removed from the promised Directorship.  (*Id*. ¶ 32.)  Defendant Sena advised Plaintiff

that the decision to remove Plaintiff from his directorship "was related to the absence caused by

the laberynthitis and [Plaintiff's] then medical condition."  (*Id*. ¶ 33.)  Plaintiff's treating

physicians did not release him to return to work until September 8, 2009, with restrictions and

limitations.  (*Id*. ¶ 34.)  Plaintiff returned to work, albeit at salary that was less than the one

referenced in the Contract and as a mere instructor as opposed to the Director of the

Mathematics Program.  (*Id*. ¶ 35.)

In his Amended Complaint, Plaintiff asserts an ADEA claim against Defendant NNMC, arguing that he was treated less favorably than a younger female employee of NNMC and that he suffered adverse employment actions in the form of the loss of his Dean and Director positions, reduced job duties, lack of consideration for the "Chair" position, and harassment and retaliation. (*Id*. ¶¶ 46, 48.)  Additionally , Plaintiff asserts claims against both Defendant NNMC and Defendant Sena for violations of the FMLA.  First, in Count II, he contends that Defendants failure to provide the proper statutory FMLA notices, their requirement that he continue to attend to workplace matters while on FMLA leave, their failure to reinstate him to his former position, and their harassing and hostile behavior toward him while he was on leave constitute unlawful interference with his FMLA rights.  (*Id*. ¶ 60.)  Secondly, in Count III, Plaintiff contends that Defendants retaliated against him on the basis of his participation in FMLA-protected activity. (*Id*. ¶ 64.)

## II.  LEGAL STANDARD

When ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 573 (1007)).  The Supreme Court's prescribed inquiry when reviewing a motion to dismiss is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  To survive a dismissal, a plaintiff must "nudge his claims across the line from conceivable to plausible."  *Id.*  (quoting *Towmbly*, 550 U.S. at 570).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to

5

believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.* Consequently, if the allegations in the complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not met the plausibility standard. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" to show that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 555. The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted).

## III.  ANALYSIS

Defendant's motion to dismiss challenges the facial sufficiency of Plaintiff's Amended Complaint on two grounds:  lack of jurisdiction and failure to state a claim.

### A.  ADEA Claim Against Defendant NNMC

Defendant NNMC argues that Plaintiff's claim against it under the ADEA, 29 U.S.C. § 623 *et seq*., must fail because there is no valid abrogation of immunity for claims asserted against States pursuant to the ADEA. As Defendant NNMC notes, it is an educational institution owned and operated by the State of New Mexico. NMCA 1978 § 21-4-1 *et seq*. The Eleventh Amendment, and the concept of sovereign immunity, bars suits against states and their entities and institutions in the absence of an express waiver or valid abrogation by Congress. *See Buchwald v. University of New Mexico School of Medicine,* 159 F.3d 487, 494 n.3 (10th Cir. 1998).

In *Kimel v. Board of Regents*, 528 U.S. 62 (2000), the United States Supreme Court held

that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals." *Id.* at 91-92.  In his response brief, Plaintiff expressly "agrees with Defendants that the . . . ADEA claims asserted against NNMC must be dismissed on sovereign immunity grounds." (Pl.'s Resp. 1.)  As such, Count I of Plaintiff's Amended Complaint, which contains Plaintiff's ADEA claim against Defendant NNMC, shall be dismissed.

### B.  FMLA Claims Against Defendant NNMC

Likewise, Defendant NNMC argues that Plaintiff's claims against it under the FMLA, 29 U.S.C. §§ 2601-2654, must fail because, as with the ADEA claim, there is no valid abrogation of immunity for the relevant claims asserted against States pursuant to the FMLA.  Defendant NNMC notes that Congress, through the FMLA, has validly abrogated state sovereign immunity for some, but not all claims, asserted under the FMLA.

The FMLA permits certain employees to take leave from their jobs, including 1) for the birth and care of a child, 2) for the adoption or foster care of a child, 3) to care for a spouse, child, or parent who has a serious health condition, and 4) because a serious health condition renders the employee unable to perform him or her duties.  *See* 29 U.S.C. § 2612(a)(1).  The Tenth Circuit has concluded that when it comes to FMLA eligibility related to the care *for others*, Congress had the power and authority to validly abrogate state sovereign immunity for claims brought under the FMLA.  *Brockman v. Wyoming Dep't of Family Servs*., 342 F.3d 1159 (10th Cir. 2003).  In contrast, the court has reasoned that Congress did not have the power and authority to abrogate state sovereign immunity for "self-care claims" under the FMLA.  *Id.* Basically, because there is no connection between gender-neutral medical leave for one's own health conditions and the prevention of gender discrimination by state employers, there is not an effective abrogation of state sovereign immunity for "self-care claims." *See id.*

7

Once again, Plaintiff concedes that his FMLA claims against Defendant NNMC must be dismissed on sovereign immunity grounds.  (Pl.'s Resp. 1.)  Accordingly, Plaintiff's FMLA claims against Defendant NNMC, which are contained in Count II and Count III, shall be dismissed.

### C.  FMLA Claims Against Defendant Sena

With regard to Plaintiff's FMLA claims against Defendant Sena, however, there is disagreement among the parties.  Defendant Sena argues that there is no basis for individual FMLA liability alleged in Plaintiff's Amended Complaint.   Plaintiff, on the other hand, maintains that Defendant Sena *is* individually liable for the asserted FMLA violations.

In deciding Defendants' motion to dismiss, Plaintiff urges the Court to follow The Honorable James O. Browning's reasoning in *Saavedra v. Lowe's Home Centers, Inc*., 748 F. Supp. 2d 1273 (D.N.M. 2010), describing it as the "seminal New Mexico case with respect to individual liability under the FMLA."  (Pl.'s Resp. 4-5.)  In their reply brief, Defendants likewise follow the analysis set out in *Saavedra*, though they maintain that Plaintiff's Amended Complaint ultimately fails to state an individual liability claim against Defendant Sena.

Acknowledging that "[t]he Tenth Circuit has yet to address whether there is individual liability under the FMLA," Judge Browning considered in *Saavedra* whether an individual defendant could be directly liable as an "employer" for the plaintiffs' FMLA claims.  *Saavedra,* 748 F. Supp. 2d at 1276.  Judge Browning, like other judges who have examined the issue, looked first to the definition of "employer" as provided in the FMLA itself.  *Id.* at 1282.

The FMLA defines an "employer" as "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  The corresponding regulation promulgated under the FMLA provides

8

additional detail as to the FMLA's definition of "employer":

> The definition of "employer"includes any person who acts directly or
> indirectly in the interest of an employer to any of the employer's employees.
> The definition of "employer" in section 3(d) of the Fair Labor Standards Act
> (FLSA), 29 U.S.C. 203(d), similarly includes any person acting directly or
> indirectly in the interest of an employer in relation to an employee.  As under
> the FLSA, individuals such as corporate officers "acting in the interests of an
> employer" are individually liable for any violations of the requirements of the
> FMLA.

29 C.F.R. § 825.104.  The plain language of the FMLA and its implementing regulation seem to

counsel a broad reading of "employer," to include "person[s]" other than the employer itself.

*See Darby v. Bratch*, 287 F.3d 673 (8th Cir. 2002).

Significantly, the United States Supreme Court, in a case involving the similarly-written

FLSA, instructed courts to construe expansively the terms "employer" and "employee."  *See*

*Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).  Accordingly, in considering

whether an individual qualified as an "employee" under the FLSA, the Tenth Circuit applied

expansive definitions of "employ" and "employer" and reasoned that "determinations about

employment relationships are not limited by any contractual terminology or by traditional

common law concepts."  *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir.

1998).  It is reasonable to assume that the Tenth Circuit would construe these same terms

expansively in the context of the FMLA, where, as 29 C.F.R. § 825.104 acknowledges, the

statutory definitions are materially identical.

Judge Browning, consistent with a majority of courts across the country, concluded in

*Saavedra* that the plain language of the FMLA and its implementing regulation suggest that

individuals are contemplated as defendants under the FMLA.  *Saavedra*, 748 F. Supp. 2d at

1282, 1291-92; *see also Modica v. Taylor*, 465 F.3d 174, 183-87 (5th Cir. 2006); *Darby v.*

*Bratch*, 287 F.3d 673 (8th Cir. 2002). Another judge in this district, The Honorable Judith C.

Herrera, followed suit, agreeing that the FMLA provides for individual liability. *See Baca v.*

*New Mexico*, 10cv96 JCH/LFG (Sept. 30, 2011). In addition, a number of other district courts

within the Tenth Circuit have held that the FMLA provides for individual liability. *See, e.g.,*

*Pinkard v. Lozano*, No, 06-CV-02523, 2007 WL 4116019, at *2 (D. Colo. Nov. 16, 2007);

*Pedersen v. W. Petrol., Inc.*, No. 2:07-CV-997, 2008 WL 977370, at *3 (D. Utah Apr. 8, 2008);

*Williamson v. Deluxe Fin. Servs.*, No. 03-2538, 2005 WL 1593603, at *9 (D. Kan. July 6, 2005).

Having determined that the FMLA provides for individual liability, Judge Browning in

*Saavedra* next considered which standard should be used to determine whether liability exists as

to a particular defendant, settling on the "economic reality test." *Saavedra,* 748 F. Supp. 2d at

1291. A variation of the "economic reality test"[1] was relied upon by the Tenth Circuit in *Baker*

*v. Flint Eng'g & Constr. Co.*, where the court sought to determine whether an individual

qualified as an "employee" under the FLSA, a distinct but somewhat related inquiry. *See Baker*,

137 F.3d at 1440; *see also Johns v. Stewart*, 57 F.3d 1544, 1557 (10th Cir. 1995) ("Because the

definition of 'employee' under the FLSA is broad, but not precise, courts apply the Supreme

Court's 'economic reality' test to determine the scope of employee coverage under the FLSA.").

Most relevant to the present matter, the court in *Baker* noted that the "economic reality

test includes inquiries into whether the alleged employer [1] has the power to hire and fire

---

[1] Applying the "economic realities test" in order to make the inverse determination – that is, whether an individual qualified as an "employee" rather than an "employer" – the Court considered the following factors: 1) the degree of control exerted by the alleged employer over the worker; 2) the worker's opportunity for profit or loss; 3) the worker's investment in the business; 4) the permanence of the working relationship; 5) the degree of skill required to perform the work; and 6) the extent to which the work is an integral part of the alleged employer's business. *Id.*

employees, [2] supervises and controls employee work schedules or conditions of employment,

[3] determines the rate and method of payment, and [4] maintains employment records." *Baker*,

137 F.3d at 1440 (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).  Judge

Browning borrowed the four factors referenced in *Baker* when he applied the "economic reality

test" in *Saavedra*.  *See Saavedra*, 748 F. Supp. 2d at 1295.

This Court finds the analysis of Judge Browning in *Saavedra* – both his conclusion that

individual liability is provided for under the FMLA and that the "economic reality test" is the

proper standard for determining liability – to be well-reasoned and persuasive and, therefore,

adopts the same.  Accordingly, the Court considers whether the allegations in Plaintiff's

Amended Complaint are sufficient to state a claim against Defendant Sena for individual liability

given the "economic reality test."  Notably, Plaintiff is not required to satisfy all four factors of

the "economic-reality test" in order for Defendant Sena to face liability; rather the determination

is based upon a totality of the circumstances.  *See Baker,* 748 F.2d at 1286.

The assertions in Plaintiff's Amended Complaint, viewed in Plaintiff's favor, relevant to

the "economic-reality test" are as follows:  Defendant Sena "exercised duties" as Plaintiff's

supervisor during all relevant times.   Defendant Sena was Provost of NNMC while Plaintiff was

an instructor there, serving as both Chair and Dean of various departments within NNMC.

Defendant Sena advised Plaintiff that, instead of being named the Dean of the Math and Science

Department as the parties' had formerly agreed, he would be named Director of the Mathematics

Program.  Defendant Sena also advised Plaintiff that his salary would be the equivalent of the

salary referenced in the Contract between Plaintiff and NNMC for the 2009-10 year.  More

particularly, Defendant Sena advised Plaintiff that he would receive a stipend in addition to his

salary as Director of the Mathematics Program.  Plaintiff requested and received approval for

leave during the first week of August 2009 from his "NNMC supervisors," one of whom was

Defendant Sena.  Then, after experiencing the onset of labrynthitis, Plaintiff corresponded

directly with Defendant Sena regarding his medical condition and the covering of his classes at

NNMC.  Defendant Sena threatened Plaintiff's continued employment at NNMC and expressed

dissatisfaction with Plaintiff's inability to handle his classes.  Defendant Sena ultimately advised

Plaintiff that he would not receive, or that he would be removed from, the promised directorship,

informing Plaintiff that the decision was "related to the absence caused by the laberynthitis."

Additionally, Plaintiff asserts in his Amended Complaint that Defendant Sena, along with

Defendant NNMC, failed to designate his medical absence as FMLA-qualifying leave, to notify

Plaintiff of his rights and responsibilities under the FMLA, and to reinstate Plaintiff to the

position he held prior to taking leave.  Moreover, Plaintiff asserts that Defendant Sena, along

with Defendant NNMC, retaliated against him for engaging in protected activity under the

FMLA.

Defendants apparently concede that the "economic-reality test" is the proper standard but

argue that "Plaintiff failed to plead the elements of [the] test" in his Amended Complaint.

(Def.'s Reply 3.)  For instance, Defendants argue that Plaintiff does not directly allege that

Defendant Sena had the power to hire or fire him, to control his work schedule, or to determine

his rate and method of payment.  Defendants maintain that Plaintiff has instead merely alleged

*communication* with Defendant Sena regarding such topics.

In the Court's view, however, the factual inferences arising from Plaintiff's Amended

Complaint, viewed in his favor, suggest that Defendant Sena *did* have the authority to hire and

fire Plaintiff, that he *was* involved in the approval of leave requests from Plaintiff, that he *did*

supervise and control Plaintiff's conditions of employment, and that he *did* have the authority to

determine the rate and method of payment of Plaintiff's wages.

Given that Defendant Sena served as Provost to NNMC where Plaintiff was an instructor

working in the capacities of "Chair" and/or "Dean" of various departments, it is reasonable to

infer that Defendant Sena exercised considerable control over Plaintiff's employment and

employment conditions.  Additionally, based upon the correspondence between Defendant Sena

and Plaintiff detailed in Plaintiff's Amended Complaint, including communications regarding

Plaintiff's absences, demotions, and salary adjustments, it is also reasonable to infer that Plaintiff

was under Defendant Sena's direct purview with regard to these matters.   Finally, Defendant

Sena's authority to control the conditions of Plaintiff's employment is demonstrated by the

alleged threats he made to Plaintiff's future employment.

As such, the Court concludes that, given the applicable "economic reality test" and under

the totality of circumstances, the inferences from Plaintiff's Amended Complaint provide

sufficient factual support for Plaintiff's FMLA claims against Defendant Sena to survive

Defendants' motion to dismiss.  *See Clay v. City of Chicago*, No. 96-c-3684, 1997 WL 106111

(N.D. Ill. Feb. 11, 1997) (denying the individual defendants' motion to dismiss, where the

complaint alleged that the defendants "informed" the plaintiff that she was being removed from

her position as director of human resources following a leave of absence taken for medical

treatment).

## IV.  CONCLUSION

For all of these reasons, the Court concludes that Plaintiff's claims under the ADEA and

FMLA against Defendant NNMC should be dismissed for failure to state a claim, but that Plaintiff's

individual-capacity claims against Defendant Sena under the FMLA should not be dismissed.

**IT IS THEREFORE ORDERED** that  Defendants' Motion and Memorandum in Support

of Motion to Dismiss ADEA and FMLA Claims (Counts I, II, and III), (Doc. 38), filed January 31, 2012, is hereby **GRANTED IN PART AND DENIED IN PART**.

      **IT IS FURTHER ORDERED THAT Count I** of Plaintiff's First Amended Complaint is **dismissed** and that the claim asserted against Defendant NNMC in **Count II** is **dismissed**.

                              _____

                              SENIOR UNITED STATES DISTRICT JUDGE