**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

ALEJANDRO GONZALEZ-ALLER,

    Plaintiff,

v.                                                     CIV No. 11-105 LH/ACT

NORTHERN NEW MEXICO COLLEGE and,
ANTHONY SENA, in his individual capacity,

    Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Contract Claims (Counts IV, V and VI) and Memorandum in Support Thereof, (Doc. 37), filed January 31, 2012. The Court, having considered the motion, the briefs of the parties, and the applicable law, and otherwise being fully advised, finds that the motion should be **granted**. Accordingly, Plaintiff's claims against Defendants for breach of express contract, breach of implied contract, and breach of implied covenant of good faith and fair dealing are dismissed.

### I.    FACTUAL BACKGROUND

On June 28, 2009, Plaintiff Alejandro Gonzalez-Aller ("Plaintiff") and Northern New Mexico College ("NNMC") entered into an employment contract for the 2009-2010 school year.[1] (Def.'s Mot. for Summ. J. on Contract Claims (Counts IV, V, and VI) and Memorandum in Support Thereof (Doc. 37) ("Def.'s MSJ"), at Undisputed Fact ("UF") ¶ 1.) The June 28,

---

[1] Defendants indicate in their motion that, although they "dispute that the June 28, 2009 contract was entered into between NNMC and Plaintiff," for purposes of their summary judgment motion they "assume *arguendo* that the June 28, 2009 contract was valid." (Def.'s MSJ, at 2 n.1.)

2009 employment contract provided for an annual salary to Plaintiff of $65,034.00 for his services as the Dean of the College of Mathematics, Science, and Engineering at NNMC. (*Id*. UF ¶ 2.) The contract explicitly provided for its own cancellation "if a condition exist[ed] in which Northern New Mexico College suffer[ed] insufficient funding by lack of sufficient appropriation of funds by either state or federal government." (*Id*. UF ¶ 3.)

Thereafter, Plaintiff learned, in a June 2009 meeting with Provost Anthony Sena ("Defendant Sena") and the president of NNMC that he would not in fact serve as the Dean of the College Mathematics, Science, and Engineering for the 2009-2010 school year.[2] (Def.'s MSJ, Ex. 3, 132:11-19.) He was advised that he would instead become the Director of the Mathematics Program. (*Id*. at 132:24-25.) According to Defendant Sena, he became aware in late July 2009 that there would be insufficient funding from the State to NNMC to implement a reorganization that had been planned for the 2009-2010 school year.[3] (Def.'s MSJ, Ex. 2, 24:12-

---

[2] Defendants suggest that Plaintiff was informed that there was insufficient funding from the State to NNMC for him to receive the promised deanship. However, as noted by Plaintiff, his deposition testimony does *not* indicate that he was explicitly informed in June of 2009 that he would not serve as dean because there was insufficient funding from the State. (*See* Def.'s MSJ, Ex. 3, at 132:11-25.)

[3] Plaintiff argues that Defendant Sena's testimony, in which he indicates that he was advised in July 2009 that NNMC would receive insufficient funding from the State for the 2009-2010 school year, has not been corroborated and has in fact been contradicted by record evidence. Plaintiff attaches two exhibits to his response brief in an attempt to dispute such testimony by Defendant Sena. (*See* Pl.'s Resp. 2.) Having reviewed these exhibits, however, the Court concludes that the evidence relates to the budget and operations of NNMC for the 2008-2009 school year, rather than the relevant 2009-2010 school year. For instance, Plaintiff attaches as Exhibit A the deposition testimony of Jose Griego, who was President of NNMC for the 2008-2009 school year but not for the 2009-2010 school year. (*Id*. at Ex. A.) Dr. Griego merely indicates that NNMC's budget was solvent as of June 2009; that is, after the 2008-2009 school year. (*Id*.) Moreover, Plaintiff's Exhibit B is a copy of the June 18, 2009 NNMC Board of Regent's Minutes, which address the financials and budget for the period *ending May 31, 2009*, or for the 2008-2009 school year. (*See id.* at Ex. B.) Notably, these minutes also reflect that Joyce Sandoval, Comptroller for NNMC, cautioned at that meeting that NNMC did not have an

25:25.)

Thereafter, on September 11, 2009, Plaintiff and NNMC entered into a new employment contract for the 2009-2010 school year.[4] (*Id*. UF ¶ 6.) The September 11, 2009 employment contract provided for an annual salary to Plaintiff of $61,612.00 for the position of instructor in Math and Science. (*Id*. UF ¶ 7.) According to August 22, 2009 e-mail correspondence between Defendant Sena and Plaintiff, NNMC's president had misgivings about Plaintiff serving as Director of the Mathematics Program because questions had been raised about whether Plaintiff was present on campus a sufficient amount of time and because there were few upper division math courses offered by NNMC. (*See* Pl.'s Resp., at Ex. E; Ex. C, at 52:25, 53:1-4.) Additionally, Defendant Sena noted in his deposition testimony that Plaintiff had been previously designated by NNMC as the Dean of the College of Math and Science without following the competitive process and recruitment criteria that was applicable to deans. (Pl.'s Resp., Ex. C, at 42:1-25.) Finally, there was a recommendation from the faculty within the department that David Torres, rather than Plaintiff, serve as Director of the Mathematics Program. (*Id*. at 104:13-20.)

---

"excess of funds" going forward and would, therefore, "need to be conservative and maintain control over its limited resources." (*See* Pl.'s Resp., Ex. B, at 2.) Defendant Sena testified that the insufficient funding for the 2009-2010 school year became known to him *in July of 2009*, the month following the June 18, 2009 Board Meeting. In short, the evidence submitted by Plaintiff does not contradict the testimony of Defendant Sena regarding his awareness of insufficient funding, and such testimony therefore remains undisputed by admissible evidence.

[4] Defendants assert that the September 11, 2009 contract was entered into "[a]s a result of the lack of funding for the position of Dean of the College of Mathematics, Science and Engineering"; however, the evidence before the Court does not fully support such an assertion. Rather, the evidence suggests that there were a variety of reasons for NNMC entering into the September 11, 2009 contract with Plaintiff. (*See* Pl.'s Resp., Exs. C & E); *see also* discussion *supra* p. 3.

During the 2009-2010 school year, Plaintiff worked as a Math instructor at NNMC and was paid an annual salary of $61,612.00, as provided for in the September 11, 2009 employment contract. (Def.'s MSJ, UF ¶ 8.)

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.*; *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248.

### III.    LEGAL ANALYSIS

Defendants argue in their summary judgment motion that Plaintiff's contract claims fail because 1) the September 11, 2009 employment contract contained an integration clause; 2) the June 28, 2009 employment contract was extinguished when it was novated; and 3) no implied contract or implied covenant flows out of the June 28, 2009 employment contract. Plaintiff, on the other hand, insists that 1) the doctrine of merger is inapplicable to the relevant employment contracts, because they involve different subject matter and because Plaintiff had no intention of modifying the first employment contract; 2) there was no novation of the June 2009 contract because he did not intend one but was instead compelled to sign the September 11, 2009 contract; and 3) Defendants have misconstrued his implied contract and breach of the covenant of good faith and fair dealing claims.

#### A.  Contract Merger and Integration

Parties to a contract may substitute a prior agreement with a new one. *See Richards v. Allianz Life Ins. Co. of N. Amer.*, 62 P.3d 320, 324 (N.M. Ct. App. 2002) (citing Restatement (Second) of Contracts § 279 (1981)). According to the New Mexico Supreme Court, the substitution of contracts, or the "doctrine of merger" as the court has characterized it, is a contract principle providing that prior agreements involving the same subject matter are presumed to be included in the final agreement. *See Superior Concrete Pumping, Inc. v. David Montoya Const., Inc.,* 773 P.2d 346, 349 (N.M. 1989). Put another way, a prior agreement concerning the same subject is deemed to "merge" into a more recent agreement. The doctrine of merger or substitution applies only to successive agreements containing inconsistent terms. *Id.*

*Corbin on Contracts* provides a helpful summarization of the doctrine of merger or

substitution:

> The new agreement may make no reference to the previous contract or claim; and yet it may operate as a substituted contract.  If the new agreement contains terms that are clearly inconsistent with the previously existing contract or claim, the fact of inconsistency is itself a sufficient indication of intention to abrogate the old and substitute the new.  The inconsistency may exist as to the whole of the former contract or claim or only as to a part.  It operates as a discharge by substitution only so far as the inconsistency extends.

6 Arthur L. Corbin, *Corbin on Contracts*, at § 1296 (1962).

Here, Defendants argue that the earlier June 28, 2009 contract merged into the subsequent September 11, 2009 contract.  Both contracts involve Plaintiff's employment with NNMC for the 2009-2010 school year.  Defendants reason that the two contracts, therefore, involve the same subject matter.  (Def.'s MSJ, at 5.)  In contrast, Plaintiff maintains that the contracts involve different subject matter:  the June 28, 2009 contract relating to a "staff assignment" and the September 11, 2009 contract relating to a "faculty assignment."  (Pl.'s Resp., at 4.)

In support of his position that the contracts involve different subject matter, Plaintiff refers the Court to the deposition testimony of Defendant Sena.  In the referenced testimony, Defendant Sena indicates that faculty assignments at NNMC are distinct from staff assignments, the two assignments implicating different duties.  (Pl.'s Resp., Ex. C., at 60:10-16.)  Apparently, a Dean position is considered a staff assignment, while a mere instructor position is considered a faculty assignment.  (*See* Def.'s MSJ, at Ex. 1 and Ex. 4.)

Nevertheless, in the Court's view, it does not follow from Plaintiff's two distinct assignments, one designated as a staff assignment and the other as a faculty assignment, that the June 28, 2009 contract and the September 11, 2009 contracts therefore involve different subject

matter and preclude operation of the doctrine of merger.  To the contrary, both contracts address Plaintiff's position, whether it be one with administrative duties or strictly instructional duties, and his corresponding salary with NNMC for the 2009-2010 school year.  The salaries provided for in the two contracts, with a $3,400 decrease in salary from the first contract to the second, indicate a corresponding change in Plaintiff's assignment and responsibilities with NNMC, such that the contracts cannot reasonably be read together to provide that Plaintiff would serve both as a dean *and* an instructor for NNMC.  Thus, the salary and position terms in the two contracts are inconsistent, not complementary.

Even viewing the contracts in the light most favorable to Plaintiff, Defendants' characterizations of the two contracts is more reasonable.  The Court concludes that the two employment contracts indeed involve the same subject matter – Plaintiff's assignment for the 2009-2010 school year – and contain two fundamentally inconsistent terms, salary and position, inviting application of the doctrine of merger.

Moreover, the intent of the parties to substitute the September 11, 2009 contract for the June 28, 2009 contract is clear from the language of the later contract.   The September 11, 2009 employment contract, signed by both parties, contained an integration clause explicitly providing that "[t]his agreement cancels all other existing agreements for the period and services covered."  (Def.'s MSJ, at Ex. 4.)  The language of the September 11, 2009 contract, thus, reflects an intent of the parties that it serve as a substitute for the June 28, 2009 contract, which covered Plaintiff's services to NNMC during the same period of time.

Applying the doctrine of substitution or merger, then, the June 28, 2009 contract and the September 11, 2009 contract merged, the inconsistent terms of the earlier contract superceded by those of the later contract.  Basically, instead of providing that Plaintiff would serve as Dean of

the College of Math, Science, and Engineering at a salary of $65,034.00, the parties' agreement was modified through the doctrine of merger to provide that Plaintiff would serve as a mere instructor at a salary of $61,612.00. Notably, application of the doctrine of merger comports with the actual performance of the parties, as Plaintiff indeed served as an instructor, rather than dean, earning a salary of $61,612.00 during the 2009-2010 school year.

Ultimately, because the inconsistent terms of the June 28, 2009 contract were discharged by substitution under the doctrine of merger Plaintiff's breach of contract claim cannot rest upon such terms. Because Plaintiff has not alleged any breach of the September 28, 2009 contract, he is without any support for Count IV of his First Amended Complaint, which asserts the breach of an express employment contract by Defendants.

## B. Novation and Extinguishment

Defendants argue, alternatively, that the June 28, 2009 employment contract was novated by the subsequent September 11, 2009 employment contract. Novation, though similar to the doctrine of merger, can be distinguished in that it takes place not by operation of law but only by agreement, depending entirely upon the intention of the parties. 17A C.J.S. *Contracts* § 575 (2012). Under New Mexico law, novation requires four elements: 1) an existing and valid contract; 2) an agreement to the new contract by all the parties; 3) a new valid contract; and 4) an extinguishment of the old contract by the new one. *Magnolia Mountain Ltd. P'ship v. Ski Rio Partners, Ltd.*, 131 P.3d 675 (N.M. Ct. App. 2006). The parties do not dispute that the June 28, 2009 contract constituted an existing and valid contract. The question, then, becomes whether the parties agreed to the new September 11, 2012 contract and to the extinguishment of the old contract.

According to the New Mexico Supreme Court in *Sims v. Craig*, 627 P.2d 875 (N.M.

1981), there must be a "clear and definite intention" from all parties that a second agreement is to be considered a novation. *Id.* at 877. Both Plaintiff and Defendants offer extrinsic evidence in support of their respective positions as to whether a novation was intended. As a general rule extrinsic evidence is not admissible to determine the parties' intent when the contract itself is unambiguous. *United Nuclear Corp. v. Mission Ins. Co.*, 642 P.2d 1106 (N.M. Ct. App. 1982). However, a novation may sometimes be inferred from the facts and circumstances surrounding the transaction. *Cardwell Inv. Cov. v. United Supply & Mfg. Co.*, 268 F.2d 857 (10th Cir. 1959) (applying Texas law); *see also* 66 C.J.S. *Novation* § 13 (2012) ("Whether or not a novation has been accomplished depends on the intention of the parties as shown either by their express agreement or by the facts and circumstances surrounding the transaction.").

Here, the September 11, 2009 contract is seemingly clear, as it provides that it "cancels all other existing agreements for the period and services covered and acceptance of [it] is indicated by the signature of the bearer." (Def.'s MSJ, at Ex. 4.) Plaintiff's signature, therefore, demonstrated his intent to work at NNMC under new terms of employment, extinguishing any prior terms of employment.

Even considering the extrinsic evidence offered by the parties, the Court reaches the same conclusion – that is, that the parties intended a novation of the June 28, 2009 contract. First, the fact that Plaintiff accepted salary payments under the September 11, 2009 contract suggests that he intended to novate the parties' former contract. *See Hennings v. CDI Corp.*, No. 10-30853, 2001 WL 4936701 (5th Cir. Oct. 18, 2011) (concluding that the plaintiff's acceptance of commission payments under a new commission plan indicated his acceptance of the plan and a novation of the former plan). In support of his argument to the contrary, Plaintiff refers to his own Affidavit and to e-mail correspondence between himself and Defendant Sena. (Pl.'s Resp.,

at 5.)  In his Affidavit, Plaintiff asserts that at no point did he "choose to surrender or cancel the June 2009 staff contract [that he] executed to be Dean of the Department of Mathematics, Sciences, and Engineering."  (*Id*. at Ex. F., ¶ 2.)  He claims, instead, that in a "take-it-or-leave" situation, the NNMC administration "involuntarily forced [him] out of the Dean's contract."  (*Id*.)  Basically, Plaintiff contends that because he preferred the terms of the June 28, 2009 contract over those of the September 11, 2009 contract but felt compelled to accept the terms in the latter contract, he lacked the intent to novate the earlier contract.

     Defendants, on the other hand, offer the deposition testimony of Defendant Sena that he became aware in late July 2009 that there would be insufficient funding from the State to NNMC to implement areorganization that had been planned for the 2009-2010 school year. (Def.'s MSJ, at Ex. 2, 24:12-25:25.)  Notably, the June 28, 2009 contract explicitly provided for its own cancellation "if a condition exists in which [NNMC] suffers insufficient funding by lack of sufficient appropriation of funds by either state or federal government."  (*Id*. at Ex. 1.)  Thus, under the express terms of the June 28, 2009 contract, insufficient funding was a condition that would discharge NNMC's duty to perform.  Additionally, the contract provided for cancellation in accordance with the regulations and policies of the approved "Staff Handbook" or upon ceasing of a relevant program.  (*See id*.)  Thus, Plaintiff was aware that the cancellation of the June 28, 2009 contract was at least a possibility.

     While it is unclear when Plaintiff learned that there was insufficient funding from the State to NNMC, it is undisputed that he *did* know by sometime in June 2009 that he would not receive the deanship that had been promised to him under the June 28, 2009 contract.  Plaintiff, though understandably disappointed that he would not receive the deanship and later a proposed directorship, ultimately entered into a substitute contract with NNMC.  But Plaintiff's preference

to have a deanship or directorship over a mere instructor position does not constitute the lack of intent to novate the June 28, 2009 contract.  In short, the facts and circumstances suggest that Plaintiff entered into the September 11, 2009 employment contract because he preferred a performable, albeit less favorable, contract to one that was conditional and ultimately not viable. *See* 30 Williston on Contracts § 76:38 (4th ed. 2012) (indicating that there is no difficulty in substituting a new agreement for one which was originally conditional).

      Although Plaintiff may have felt compelled to sign the September 11, 2009 contract in the sense that he feared he might otherwise be without a teaching position at NNMC, he does not allege, nor is there any record support for such an allegation, that he was subjected to duress. For "one who is seemingly forced into a contract while also according deference to the possibility of gain from the transaction, is not under duress."  28 Williston on Contracts § 71:25 (4th ed. 2012).  Here, the evidence before the Court suggests that Plaintiff made a calculated decision that he would prefer to work under new employment terms than risk losing employment with NNMC altogether because the June 28, 2009 contract could not be performed.

      Further, even assuming *arguendo* that Plaintiff entered into the September 11, 2009 contract under duress, it would merely render the contract voidable, not void.  Restatement (Second) of Contracts, § 175.  Significantly, because Plaintiff accepted the benefits of the September 11, 2009 contract throughout the 2009-2010 school year, he cannot now be heard to complain that the September 11, 2009 contract was invalid because of duress.  *See Goldstein v. S & A Restaurant Corp.*, 622 F. Supp. 139, 145 (D.D.C. 1985) (concluding that a victim of duress "may ratify the agreement by accepting its benefits").

      Plaintiff also submits evidence of e-mail correspondence between himself and Defendant Sena concerning NNMC's decision not to offer him the directorship, a position that Defendant

Sena proposed in lieu of the unviable deanship. (*See* Pl.'s Resp., Ex. G, at 2.) But this evidence also does little to support Plaintiff's position that he did not intend a novation of the June 28, 2009 contract. After all, NNMC's decision not to offer Plaintiff a *directorship*, the subject of the referenced e-mail correspondence, came months after Plaintiff had already learned that performance under the June 28, 2009 contract, the contract granting him a *deanship*, would not be performed. Although NNMC's ultimate decision not to offer Plaintiff a *directorship* was indeed unilateral, (*see id.* at 2), it does not follow that the decision to novate the June 28, 2009 deanship contract was similarly unilateral.

Finally, Plaintiff notes that a contract for novation, like any other contract, must be supported by good and sufficient consideration. (Pl.'s Resp., at 5) (citing *Sims v. Craig*, 627 P.2d 875 (N.M. 1981)). Indeed, a contract to perform at a higher or lower price what an individual is already required to perform generally fails for lack of consideration. *Sims,* 627 P.2d at 878. Plaintiff's position, though not explicit, is apparently that the September 11, 2009 contract was a contract at a lower price requiring NNMC to perform what the June 28, 2009 contract already required it to perform. However, because the June 28, 2009 contract was conditional and could be cancelled by NNMC in the event that it received inadequate funding, among other reasons, the continuation of the employment relationship between Plaintiff and NNMC, even with Plaintiff serving as a mere instructor, formed the requisite consideration for the September 11, 2009 contract. *See Richards*, 62 P.3d at 325-26 (reasoning that the continuation of an insurer/agent relationship, where the insurer had the right to terminate the former contract, formed the requisite consideration in a substitute contract).

For all of these reasons, the Court concludes that both parties intended the September 11, 2009 contract to be a novation of the June 28, 2009 contract. Plaintiff has, therefore, failed to

designate specific facts showing a genuine issue for trial on Count IV of his Complaint for breach of an express contract.

### C. Implied Contracts

In addition to his claim against Defendant for breach of express contract, Plaintiff also asserts claims for the breach of an implied contract. (*See* First Amended Complaint ("Complaint"), at ¶¶ 74-77.) Defendants contend that "[o]n the face of the Complaint, Counts V and VI. [sic] flow from the June 28, 2009 employment contract." (Def.'s MSJ, at 6.) Because the June 28, 2009 contract was superceded or novated by the September 11, 2009 contract, Defendants reason that the claims flowing from the June 28, 2009 contract also fail as a matter of law. (*Id.*) In response, Plaintiff contends that Defendants have misconstrued his breach of implied contract claims, because the basis of the implied contract is NNMC's "personnel policies and procedures" rather than the express June 28, 2009 contract. (Pl.'s Resp., at 5-6.)

Indeed, Plaintiff's First Amended Complaint alleges that Defendant compiled and published policies and procedures, to which it required all of its employees to conform, and that such policies and procedures constituted an implied contract of employment. (Complaint, at ¶¶ 74-77.) According to Plaintiff, Defendants breached the implied contract arising from the polices and procedures in the following ways: by "demoting [Plaintiff] without due process, forcing him to work during the period of time he was on leave, refusing to grant [Plaintiff] sick leave, hiring lesser-qualified candidates for positions [Plaintiff] had applied for and shown interest in, and removing [Plaintiff] from performing administrative duties in the Mathematics, Sciences, and Engineering Department." (*Id.* at ¶ 77.)

Defendants primary argument in response is that in New Mexico "one may not plead an express contract and recover on an implied one," citing three New Mexico cases, *Harbison v.*

13

*Clark*, 284 P.2d 219 (1955), *Crawford v. Holcomb*, 262 P.2d 782 (1954), and *Chavez v. Potter*, 274 P.2d 308 (1953). (Def.'s Reply, at 8.) Notably, however, it is not clear that Plaintiff has committed such an offense, as he pled *both* the breach of an express contract *and* the breach of an implied contract in his complaint. More significantly, the cases cited by Defendants were expressly overruled by the New Mexico Supreme Court in *State ex rel. Gary v. Fireman's Fund Indem. Co.*, 355 P.2d 291 (N.M. 1960). There, the court held: "We now announce that recovery should be allowed on *quantum meruit* even though the suit was originally framed on express contract." *Id.* at 294-95. Consequently, the referenced cases do not support Defendants' position that Plaintiff may not plead and/or recover on both express and implied contract claims.[5]

Defendants also make the somewhat related contention that Plaintiff's implied contract claims "flow from" the June 28, 2009 contract, though they make little effort to flesh out this position. Plaintiff, in contrast, insists that his implied contract claims are *not* premised on the parties' express employment contracts but arise from NNMC's policies and procedures alone.

New Mexico courts have at times found an implied contract premised upon employer policies and procedures. *See, e.g.*, *Garcia v. Middle Rio Grande Conservancy*, 918 P.2d 7 (N.M. 1996). In *Garcia*, the New Mexico Supreme Court held that a personnel policy that applied to

---

[5] The cases cited by Plaintiff have not only been overruled, but they are also not directly on point, as they involve actions in *quantum meruit* or quasi-contract, rather than contracts implied- in-fact. Admittedly, the line between implied contracts and quasi-contracts is sometimes indistinct, and "much confusion" has arisen over the doctrines in case law. *See* Restatement (Second) of Contracts § 4 cmt. a; § 19 Reporter's Note, cmt. a (1981). Nevertheless, according to the Restatement, an "implied in fact" contract is an actual agreement inferred from the parties' conduct, where a quasi-contract is one implied as a matter of law to avoid unjust enrichment. *Id.* at §19, Reporter's Note, cmt. a. Given these distinctions, it appears that Plaintiff's breach of implied contract claim is premised upon an alleged contract "implied in fact" rather than a quasi-contract claim for recovery in *quantum meruit*, rendering the cases cited by Defendants inapposite.

the employee-plaintiff constituted an "implied employment contract" between the employee-plaintiff and employer-defendant. *Id.* at 11.  The Court noted that the personnel policy at issue comprehensively controlled the employer-employee relationship between the parties and created an expectation that the defendants would follow the provisions contained therein. *Id.* at 13.

However, as discussed herein, the parties' June 28, 2009 employment agreement merged into or was novated by the September 11, 2009 contract, *see supra* pp. 5-13, the parties adopting new employment terms and agreeing that Plaintiff would serve as a mere instructor rather than a dean.  Given that the September 11, 2009 contract superceded the parties' earlier express employment contract, it follows that Plaintiff is precluded from recovering on an implied contract theory for the breach of the express July 28, 2009 contract and its incorporated policies and provisions.  Moreover, the September 11, 2009 contract provided as follows: "This agreement cancels all other existing agreements for the period and services covered and acceptance of this contract is indicated by the signature of the bearer."  (Def.'s MSJ, Ex. 4.)  Thus, the September 11, 2009 contract effectively cancelled any outstanding agreements related to Plaintiff's employment with NNMC during the 2009-2010 school year, including any implied agreements that may have arisen from NNMC policies and procedures.

Consequently, Plaintiff may not maintain claims for breach of implied contract predicated on NNMC's policies and procedures.  Accordingly, the Court will grant Defendants' motion for summary judgment with respect to Plaintiff's implied covenant claims, and Count V will therefore be dismissed.

### D.  Breach of Implied Covenant of Good Faith and Fair Dealing

Additionally, Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing that is associated with any contract in New Mexico by not performing in

accordance with the contractual obligations established through both express and implied contracts between the parties.  (*Complaint,* at ¶ 83.)  The Court has granted Defendants' summary judgment motion with respect to Plaintiff's breach of contract claims, both express and implied.  Plaintiff may not maintain a claim for a breach of the implied covenant of good faith and fair dealing apart from a surviving contract claim.  Count VI must therefore be dismissed.

## IV.  CONCLUSION

For all of these reasons, the Court concludes that all of Plaintiff's contract claims against Defendants should be dismissed.  Defendants' motion is therefore granted with respect to Count IV, V, and VI.  As addressed in this Court's May 10, 2012 Memorandum, Opinion, and Order (Doc. 47), however, Plaintiff's Family Medical Leave Act claims against Defendant Sena in his individual capacity, in Counts II and III, remain.  Finally, Plaintiff's negligent misrepresentation claim, which has not thus far been the subject of a dispositive motion, also remains.

**IT IS THEREFORE ORDERED** that  Defendants' Motion for Summary Judgment on Contract Claims (Counts IV, V and VI) and Memorandum in Support Thereof, (Doc. 37), filed January 31, 2012, is hereby **GRANTED.**

**IT IS FURTHER ORDERED THAT Count IV, Count V, and Count VI** of Plaintiff's First Amended Complaint are hereby **DISMISSED WITH PREJUDICE** but that the individual capacity claims against Defendant Sena in Count II and III remain.

_____
SENIOR UNITED STATES DISTRICT JUDGE